Good morning everyone. So we have two cases on for submission and two cases on this morning for argument. I'm told that all parties are present so we will go ahead and call the first case on the calendar which is United States v. Terry Lajeunesse. Good morning Your Honor. May it please the court. James Egan for Terry Lajeunesse. Mr. Lajeunesse challenges the district court's denial of his suppression motion and allocution rights at sentencing. I'd like to address the suppression issue first, leaving a few moments at the end for the allocution error. The district court erred in failing to suppress evidence obtained from a warrantless search of Lajeunesse's phone for one simple reason. Officers lacked any information that would have made reasonable the search of his phone for illicit images. At most, officers reasonably suspected Lajeunesse maintained a prohibited social media profile on Facebook and may have accessed it. What is the standard as to whether the search was lawful or not? So as far as I can tell, this court has only addressed New York State probation in one case, that's United States v. Chirino in 2007 that follows Griffin, Knights and Sampson and the court there applied reasonable suspicion. That decision has not been overturned. So reasonable suspicion is the standard for notwithstanding consent, reasonable suspicion is required. Well, Your Honor, the you're talking about the condition itself that That was part of the probation. As that's the consent issue. Yeah. Well, that In Chirino, there was a similar condition that that allowed probation to conduct a search of the defendant's home. And notwithstanding that condition, this court required reasonable suspicion. Had this defendant, Lajeunesse, had he consented to searches? Outside of the condition of this probation. What was, what were the facts related to the question? I see. Well, he was A scheduled probation Home visit was scheduled for March 11 His probation officer arrived. And probation officer asked him whether he about his romantic relationship with this woman. Lajeunesse told his probation officer that she was 19 almost 20 that they were indeed engaged in a lawful sexual relationship. Probation demanded the phone from him. He turned it over. Probation opened up the phone saw the image of the girl in question in the background. Given the information from the wife, the ex-wife. That that he was having a relationship with a teenager. Wasn't that reasonable suspicion to look for the phone, not necessarily for images, but just for communications with the apparent teenager. No, your honor, because the Facebook her Facebook page, which officer Murray accessed made clear that she was not a minor that gave information about where she went to high school at a different town. I mean, there were certainly indications that she wasn't a minor, but it It wasn't conclusive in any way. The indication as far as I could tell you, the only indication was the ex-wife's claim that she was a teenager. That is, and officer Murray's viewing of pictures of on her Facebook page. Bear in mind, he had two weeks to confirm or dispel her age took no steps to do so until after the phone was seized and initially searched. You agree he has a lesser privacy interest because of his status. Oh, certainly. Yeah. And I mean, do we do we need less reasonable suspicion in these circumstances? No, I think it's a, you know, it's the same reasonable suspicion that applies across the spectrum of Fourth Amendment balancing cases. This is no different. Before you run out of time, could you address the second issue? Yes. Yeah. Thank you, Your Honor. He was just never given a chance to speak. That's correct. Not even asked if he wanted to. His defense counsel presented reasons for below guideline sentence or I guess at the bottom. Everyone must have just forgotten about his right to say something. I'm sure it wasn't done intentionally. Yeah, I can't speak to that. All I know is that he was not provided the opportunity. So there isn't a case in this circuit involving the failure to give an opportunity to speak at sentencing and an appeal waiver. Right. So why shouldn't the appeal waiver preclude the claim now? Well, because the appeal waiver only addresses the term of imprisonment of 210 months or less. I'm not particularly persuaded by that argument because the challenge is to, you know, if he had had an opportunity to speak, then he might have gotten a lower sentence. So it is still a challenge to the sense the bottom line is he's looking for a lower sentence. I was more interested in your second argument, which is, you know, in essence, it's not a constitutional right, but it's a fundamental right. Can you really, I mean, one of the key moments of a sentencing is when the defendant has a chance to essentially ask for mercy. And is this something that should be carved out of the appeal waiver? Before I abandon the waiver argument and address the second point, Your Honor, can I just say that it is perhaps it is true, of course, that allocution goes to the length of sentence, but it pervades the entire sentencing hearing. It can affect the conditions confinement, it can affect the length and conditions of supervisory release, the financial penalties. So it's not just a right that bears on the length of sentencing. And whereas the appellate waiver is crafted to only address the length of sentence. So I don't think it even falls within the waiver provision. But to the extent the court finds that it does, the court should not apply that waiver provision because, as you say, it is a right that has, it goes to the whole point of the sentencing hearing, which is to allow parties. You have another obstacle, which is the plain error rule. I mean, here it's, here it's pretty obvious that if somebody had made an objection, if the defendant had said or his lawyer had said, Your Honor, he has the right to speak, the judge would have said, oh, yes, of course. Would you like to address the court? Sure. There's no question, and this really very clearly illustrates the reason, part of the reason for the plain error rule is that mistakes happen, but you've got to call it to the court's attention by an objection so that the court can correct the mistake. If the court persists in not correcting it, no, I'm not letting you speak. You've done terrible things and I'm not letting you speak. That would be a very different kind of a case. Agreed, but the right is the right. It doesn't speak to the intention of the court. But that's what the plain error rule in every case that the plain error rule addresses. There's a right that is a right, as you said, but that was not observed, that there was something that was done that was against the law and violated a right of the defendant. But there has to be an objection without which the standards of the plain error rule take over. And it has to then be a miscarriage of justice. Absolutely, and I think the Tenth Circuit decision in Bustamante explains why the error here satisfies the plain error review standard. It's clearly plain, it was clearly erroneous, the government doesn't contest that. It affects his substantial rights, got a higher sentence than was possible, was given a lengthy term of supervisory lease with conditions. Why is it a miscarriage of justice? In this case, there were papers filed arguing, arguing on his behalf with respect to the sentence. And just by saying, wait, your honor, he'd like to speak, that would have cured it. Why is it a miscarriage of justice? Which is part of what must be the case for plain error rule to- I think as the Tenth Circuit explained, it's part of miscarriage of justice, because there are public policy rights beyond just the defendant's own concerns about getting a lower sentence. It allows the district court to address the defendant personally, gives the chance for the victims to hear from the defendant. It ensures that the defendant is given the opportunity to explain why he accepts responsibility and why his rehabilitation efforts are sincere. Those things are, it can't be assessed from the cold record of a written letter. It is the quaking hand, the quivering voice, as one court put it, that will express the sincerity of defendant's actual words. You can't get that from the letter itself. Is there anyone with questions? Thank you, yes. Yeah, I'd like to go back to the questions I was asking before. You were in the midst of answering my question. What was the factual basis for the contention that there was consent here? What were the facts that related to the question of whether the defendant consented? So, as I see it, there are two possible ways that consent could be argued in this case. The first is the condition itself, which I think does not apply, because the condition itself does not express what, doesn't put a, doesn't say that it can be searched without any suspicion, as Cherino applied the same kind of condition. What did the condition say? The condition, the one, there's two probable conditions that could apply here. One said that he would permit a search of your personal vehicle, a place of abode, including any computers or electronic devices, and seizure. Do you want me to continue with that condition, or is that? Okay, there's another condition. There's a condition, let's see here, I've got it here, thanks, thanks. There's also a condition that says you will agree to unannounced examination by a supervising probation officer or designee of any and all computer and or related electronic devices to which you have access. This includes a host of things, but relevant here are cell phones. The examination may be conducted where the equipment is located or may be removed and examined in a controlled or laboratory facility. And did he sign something to indicate his consent, or was that just something that was in the conditions of probation, that he was serving probation and those were conditions that were imposed on him? Right. Did he make some kind of assent to those conditions? There's an acknowledgment at the end that says I have read and received a copy of the above order and conditions of probation and agreed to comply with them. He signed it? He signed it with, yes, later, not in court it doesn't look like. He signed it with his probation officer later, about a week later. And what would be the consequence of his saying, no, I don't agree to these conditions? Well, so this is a little bit of a unique case because it was interim probation. So in this case, it's between a guilty plea and formal sentencing. So I think he would have just proceeded to formal sentencing and been sentenced up to three years in prison if he had not if these conditions were not imposed on him. He also handed the phone over to the police officer, right? At the probation officer's order. At the visit, is that consent? No. Why isn't it consent? Here's my phone. Well, typically we think of consent as an agreed upon intelligent knowing agreement to allow the thing in question, the search in question in this case. If probation had said, will you allow me to search your phone for child pornography, then we'd have a different case. He didn't say that. There was no indication that anybody, that Lajeunesse himself had agreed to that. Nothing in condition allowed probation to search for child pornography. It was completely broad. Implicit consent? Why else would you hand your phone over to someone? You're doing it so that the person can take a look at it. Yes, but to a limit. There's not an express agreement to allow the search in question. If it's, let me see your phone so that I can see that it's your phone. You've used it. Maybe the search is just to confirm that he had accessed Facebook and that it wasn't somebody else that had hijacked his account and that could have confirmed that issue. The officer also unlocked the phone, right? Doesn't that imply that the defendant gave the passcode so that the phone could be unlocked? And isn't that further evidence of consent? No, your honor, that's just- I hand you my phone, I say here's my passcode. You don't think that's implicit consent to go take a look at what's in my phone? No, I mean, he does have the condition to permit his probation officer to conduct the search. He must think that the probation officer is doing this because the probation officer has reasonable cause, right? Because that is the standard. So that's, I think- Well, no, why is that the standard if the person has previously signed his consent? He said, I have read these conditions and I agree to comply with them. If in that context, the probation officer says, okay, here I am making an unscheduled visit. Let me see your phone, give me the password, and he does all those things. Why take it in the context of someone who has already signed his house searches of the content of the phone, that it's further consenting in the individual instance? Because as in Trino, and even your court of appeals decisions, Huntley and Jackson, these conditions are imposed against legal backdrop. And that they be done in the case of Huntley and parole searches, that they be done only when the search is reasonably and rationally related to his duties or her duties. Just as- What earthly argument is there that this was not reasonably related to the probation officer's duties? Well, because that's not my sole argument, your honor. The case of Trino requires reasonable suspicion. And so the condition in Trino was imposed as similar here. The search for a house, there was no limitations on what the officer could search for. Nevertheless, the court required reasonable suspicion before the officer could conduct a search. Thank you. Thank you. May it please the court, Paul Silver on behalf of the United States. The search here was done reasonably. Notwithstanding the argument that more could have been done to determine the woman's age with whom Mr. Lagerness was having a relationship. And in the criminal context, I don't believe there's- I've seen a case that says reasonable suspicion is defeated because of an inadequate investigation or because there are possible innocent explanations for the conduct. And I think that would apply here. Are there any cases in which a consent, in which a search that had been consented to is set aside because it was done without reasonable suspicion? Not that I'm aware of, Your Honor. I struggled with the appropriate standard here, and I've distilled it to this point. I don't know if this will be helpful to you. In Griffin versus Wisconsin, there was a state standard that required a search by a probation officer of a probationer be supported by reasonable grounds. And when the court talked about those reasonable grounds, it was similar to reasonable suspicion. It was those kinds of things. What was the factual basis that caused the search to occur? In United States versus Knights, the court held that- Now, in Griffin, was there consent? I believe so, Your Honor, yes. But the court upheld the search? Yes. The court upheld the search? Yes. Finding that there was reasonable grounds, and there was consent as well. Yes, which raises another interesting- I mean, there was reasonable suspicion and consent as well. No, Your Honor, I don't believe that the Griffin court found reasonable suspicion. They found that the state required reasonable grounds and applied that standard and said that reasonable grounds had been established. By what? What established that there were reasonable grounds? The factual basis for the officer's search. Which was reasonable, there was reasonable suspicion or- It was very close to reasonable suspicion, Your Honor, yes. It was the same kind of, what was the information that the probation officer had that would justify the search? So it is very similar. But in Knights, the Supreme Court held that a search of a probationer by a law enforcement officer has to be supported by reasonable suspicion. And we know that the Supreme Court has drawn a distinction based on who is doing the search. If a law enforcement officer must have reasonable suspicion to search a probationer, it seems evident that if the probation officer is doing the search, something less is required. And I think what that is, is that the search has to be reasonably related to the probation officer's duties. Just out of curiosity, is it not the fact that probation officers routinely search as part of their job, make unannounced searches without any particular new suspicion? That they simply say, well, we haven't checked in on such and such a probationer in a while. It's time to go knock on his door unannounced and make a search. Isn't that something that's routinely done? I believe so, Your Honor. And what the courts say is, as long as that is done in furtherance of the probation officer's duties, that's reasonable and consistent with the Fourth Amendment. The only circumstance I've seen in the law which was outside of the probation officer's duties is, was there an attempt to harass the probationer, but that's clearly not the case here. But I mean, there have been cases that have said that notwithstanding that it's the probation officer's performance of his reasonable duties and within his job and all of that, reasonable suspicion is also required. If notwithstanding consent and the probation officer is acting in the ordinary course within the scope of his job and it's reasonable to do so, there still is a need for reasonable suspicion, there are cases that say that. I think there are cases that say that and I don't think the law is clear, because the cases become confused whether we're talking about a law enforcement officer or a probation officer doing the search. And the cases become confused whether the person being searched is a parolee, a person on supervised release federally, or a probationer. So I- I'm sorry, I just was going to say, but just more generally, putting aside the question of who the person doing the search is. Are there cases in fact where the consent is, and I'm using consent here in terms of agreeing to the conditions or what have you, that that's been relied on alone? Or is it the case that in most instances, the court is also saying, well, yes, there's reasonable suspicion or reasonable grounds. But the idea that either without considering reasonable suspicion or when they're actually acknowledging maybe there is not reasonable suspicion, upholding it solely on the basis of the consent in the original conditions. And I think, yes, I think the answer to that question is yes. And I think that's going to happen more frequently now that this court has decided the Bragg's decision. Where- The answer is yes, there is a case? That has relied- I think that was the question. Is there a case? I can't, may I have a moment please, your honor? Where the court relied solely on the consent and the condition, without discussing a reasonable ground or a reasonable suspicion. Well, in Bragg's, the court said, this court said that the district court was wrong to rely on the reasonable suspicion standard that was articulated under state law as being required for a parole search. And said, it's strictly a matter of federal law. And the question is, was the, in that case, the parole officer acting reasonably in relation to his duties as a parole officer? And I apologize for the delay. I'm trying to think if I can think of a case that answers your question. That's fine. I mean, I just was wanting to get a sense of whether or not it's clear there's case law out there supporting that. Perhaps there is a case, a particular case or not. But it just seems as if very often these cases are not relying solely on the consent given in the probation or parole agreement. But that's, I mean, you don't have to look for something further. There is a case that I have not cited involving a parole officer. I don't want, a probation officer, I don't want to be unfair to my adversary here. It's a Western District of New York case where the court found reasonable suspicion but said it didn't have to because of Braggs. That's the United States versus Al Faro, Western District of New York, 2022 Westlaw 3499684. But that's not a case that I have shared with my adversary. I don't want to be unfair here. I guess I already have. And if you could speak to the sentencing point? Yes, your honor. And I'll just, I'll just call. May I just add a couple, before you move on to the next point, let me just ask you. What would be the consequence of a probationer refusing to give consent? I'm making an assumption here, your honor. I think when the court offers a sentence of probation, not in lieu of, but right, instead of going to jail, if the probationer, the potential probationer, said I'm not going to agree to these conditions, it seems to me that a term of imprisonment would likely be the result. Likely, but now there's no automatic. But in this case, as your adversary was saying, it was not a sentence of probation. It was an interim probation awaiting sentence. Is that right? The way I interpreted interim probation was that it was not significantly different from probation. It hadn't been sentenced yet. Your adversary said, in response to the same question, that what would have happened was, since he hadn't yet been sentenced and he was on an interim sentence, a waiting sentence, the court would then have moved to the next phase and passed sentence, which could have been whatever the sentence would have been, whatever the court found appropriate. So in this circumstance, your honor, if Mr. Lajeunesse had not agreed to the search condition, I'm hypothesizing that he would not have been permitted to be on probation. But he might have. I can't imagine a judge allowing that. That would have been up to the court. Yes. No rule one way or the other on the subject. I'm not that familiar with the state law, your honor, so I don't know. But I would find it surprising if someone was allowed to get the benefit of that situation without agreeing to the court's parameters. With respect to the sentencing issue, in Arevalo, this court spoke in broad terms, saying that an appeal waiver that is knowing and voluntary, applies to rule 32 errors, of which Mr. Lajeunesse complains. And the circumstances under which this court will not apply a waiver certainly are not present here. There's no invidious type of event where the court having imposed sentence on a whim. What about the idea, I mean, this doesn't fit within the previously expressed sort of carve outs for waivers. But what is the reason why we should not find this to be appropriate or analogous to those types of cases in terms of saying that the waiver shouldn't apply when the defendant's not permitted to allocate or to speak at a sentencing? Well, I mean, the court has always said waivers are presumptively enforceable. They are only not enforceable in very limited circumstances. I disagree with- It seems that it's such an important part of the sentencing process that I think it's significantly different from factual disputes in a PSR, which is what the Arevalo case was about. I mean, it's the defendant's opportunity to address the court. It just seems like something that ought to happen. I'm troubled by the notion that it didn't happen and that the argument is waived. Well, it clearly has a dimension to it that's different from the factual dispute in a pre-sentence report. Is plain error applicable? If the waiver is not enforced, I think the question would be, was there plain error? I disagree again with my adversary about whether plain error has been established. I don't think there's anything before the court to indicate that if Mr. Lajunas had said something in addition to, for instance, what he said in his letter to the court, or- I mean, I agree that if anyone had spoken up, the judge would have said, of course, you have an opportunity to speak. But by the same token, it's such an obvious error that why isn't it plain? Is it such an obvious mistake? The error is plain. The error is plain. The error is obvious, I beg your pardon. It's an- The error is plain. No, I disagree, Your Honor. I think plain- I meant plain in the sense evident. Obvious. Clearly evident. I didn't mean- I agree. I didn't mean that it satisfies the plain error standard. I just meant it is plainly evident. I agree. That that part of the plain error rule is satisfied. Yes, it's an error. The error is obvious or plain, as Your Honor indicates. I don't- Whether it had an impact is- Right. Yes, to the extent that it's a miscarriage of justice. On appeal, there's nothing presented to Your Honors about what could have been said in addition to what was said. So I don't think- Is that a fair, I mean, who knows what might have been said? When you speak at sentencing, it is not as if he would have been limited to reiterating what was in his letter. He would have been free to express whatever he wanted to the judge in that time. And so to say, well, it wouldn't have made a difference, I don't know how we can judge that. Would your position be, if there'd been no letter from him at all, then would your position be different? Would you say then at that point, yeah, this is, it does satisfy the standard? Well, in the absence of a letter, I would still say that a person who fails to object in the district court and wants this court to find that there was plain error should give the court a basis to make that determination. But what does that mean, though? Does he say, well, you know, if I'd been given the opportunity to speak, I would have said X, Y, and Z, and that would have changed the judge's mind? That's what your burden is? This is not a right about the right to speak at sentencing. It's not purely about presenting data to the court or what have you. It's about expressing potentially remorse and speaking to the court. And so now that you're suggesting that even if there hadn't been a letter, you still don't think this is plain error, I guess I'm skeptical of that. Well, because I think, obviously, the burden to establish plain error is on the party who failed to object. So the defendant should come into court if it's plain error, and in fairness- Why isn't it plain error? It's not plain? Why is it not plain error, given the importance of a defendant addressing the court, expressing remorse, the court seeing the defendant, evaluating the defendant's demeanor, making decisions on whether the defendant truly is sorry? Because, your honor, with all due respect, plain error or not does not hinge on the value or importance of the right at issue, the Supreme Court has made that clear. So, again, the defendant should present this court with something- Well, there's a category of cases that the Supreme Court has described under the standard of structural error. Something that one simply doesn't argue about whether, I mean, for example, the right to be present in court, or I don't remember exactly which are the categories that fall and which are the incidents that fall under structural error, but should this be deemed a structural error if you didn't give the defendant allocution end of inquiry? It's got to be done again? I don't believe so. I don't believe it's ever been characterized like that. I mean, the defendant is present with an attorney. The attorney did a thorough job of presenting arguments to the district court, including the defendant's letter. The district court did a thorough job of explaining its sentence. The failure to ask the defendant if he had anything to say, I don't believe this is a structural error, any more so than a failure to resolve factual disputes raised with a pre-sentence report. It's something that the rule requires, but not structural. I'm way over my time, unless you have further questions, I'll sit down. Thank you very much. Thank you. Thank you. Judge Lee, as far as I could tell, there is no case that relies on consent alone, although the Supreme Court and this court have had multiple opportunities to do so. Supreme Court and Knights certainly, and Sampson even. It's a consent to the law for parolees. They can either consent to that or stay in prison. They could have relied on that, they didn't. Judge LaValle, you pointed out that the defendant could have said something, his attorney could have said, hey, what about allocution? And that was the case in Bustamante as well, the 10th Circuit. Defendant just simply didn't say anything, the court didn't address the defendant. And before imposing sentence, the court even asked, is there anything more before I impose sentence? Defendant remained silent, court still found plain error. Isn't that essentially saying that this has moved into the category of structural error? That's what structural error is. Structural errors are errors that have been determined by the courts to be such a departure from basic elements, basic required elements of criminal justice that we don't inquire into whether there was harm. I agree. I mean, that's essentially what I'm arguing, Your Honor. There's some support in this. Structural error, even though there's never been a case that recognized it previously as structural error, it just doesn't happen very often. I think that usually applies with respect to other, in other contexts than plain error review, but I think to the extent of analogous and helpful, yes. I mean, it's certainly similar to the court just proceeding to sentencing following the plea and saying, I'm not going to have a sentencing hearing at all. I'm going to impose 198 months. I can do that. You can't appeal. Sorry. And Judge Lee, on the allocution issue, just quickly, the judge didn't address Blagenese's letter at all. It said it considered defense's submissions, but it's not like it went through his letter and, you know, I say you said this, but, you know, I'm still going to pose the same sentence, even though you said that. And as you point out, it is the way the words that are said in open court that allows the defense to make a decision. Allows the defendant to show remorse and allows the public to understand the defendant's crimes and position. If there are no more questions, thank you. Yes, thank you. Thank you both. We'll take the case under advisement.